ANITA SANDERS, *Adm'x v.* H. P. WELCH CO.

*Murchie & Murchie (Mr. Alexander Murchie* orally), for the plaintiff.

*Demond, Sulloway, Piper & Jones (Mr. Piper* orally), for the defendant.

BRANCH, J. Defendant's motion for a directed verdict is based upon the contention that "the only possible conclusion is that this accident resulted solely from Adler's confusion and failure to act." This contention, in turn, rests upon the admitted fact that Adler had had one drink of whiskey and one drink of undisclosed but undoubtedly alcoholic content, some two and a half hours before the accident. Defendant's whole argument reflects a feeling of outrage that it should be held liable for a collision with another car driven by a person in Adler's condition. The record, however, contains ample evidence of his sobriety.

The plaintiff's car, driven by Adler, ran into the rear of the defendant's truck which was findably parked illegally upon the highway (Laws 1927, c. 76, s. 3) unprotected by flares as required by the statute (Laws 1935, c. 116, s. 2) and equipped with reflectors not installed in accordance with the law. Laws 1933, c. 105, s. 2. The defendant concedes that "The question of whether or not this statute was breached in this respect was a question of fact for the jury to determine and the jury could have found that the failure to put out flares earlier constituted a breach of the statute." Under these circumstances it is impossible to deny that defendant's illegal conduct was, in part at least, a cause of the accident, and Adler's conduct presents itself merely as a contributing cause, the effect of which is hereinafter considered. The motion for a directed verdict was properly denied.

The first claim of error advanced by the defendant as a reason for a new trial has to do with the charge of the court upon the question of reflectors. The defendant duly excepted to the denial of its eighth request for instructions, which was as follows: "8. The fact that the reflectors on the rear of the defendant's truck may not have been located so as to show the extreme width of the vehicle, is wholly immaterial and had nothing to do with the accident, because Adler, the driver, has testified that he did not see the reflectors at any time." This request was denied and the court instructed the jury as follows: "You are instructed if the reflector on the truck in question was not so located, in such manner as to show the extreme width of the truck, then the failure to have such reflector show the extreme width of the truck was legal fault on the part of the defendant and if such legal fault caused or contributed to the cause of the collision and the death of the deceased, then the defendant is liable and your verdict should be for the plaintiff."

The defendant's truck was equipped with two reflectors, but the

testimony and the photographs introduced by the plaintiff demonstrate that they were installed in complete disregard of the statute (Laws 1933, c. 105, s. 2) which requires that a reflector shall be "placed on the rear of the body of said vehicle to the left of the center thereof, in such a manner as to show the extreme width of said vehicle and to reflect rays of light thrown upon such reflector." The reflector in question was not "placed on the rear of the body" of the truck at all, but was suspended under the rear of the body, twenty inches from the left-hand corner thereof, over the inside edge of the inside tire of the left dual wheel of the truck, and at an undisclosed but appreciable distance forward from the rear of the body. The defendant argues, however, that the location of the reflector "had absolutely nothing to do with the accident." The court is divided upon this point and inasmuch as new evidence may be introduced at another trial it is deemed inexpedient to express an opinion on it.

The next contention of the defendant is that Adler's supposed negligence precludes a recovery by this plaintiff because he was acting as the agent of the deceased. The defendant seasonably requested the court to charge the jury as follows: "Adler, the driver, was Sanders' agent, and if Adler was guilty of any negligence which in any way caused or helped to cause the accident, Sanders cannot recover, for the negligence of an agent is imputed to a principal." The court instructed the jury as follows: "You are instructed that Mr. Adler, the driver of the car that collided with the truck in question, was not the agent of Mr. Sanders, the deceased. Therefore, if you should find that Mr. Adler was negligent under the circumstances, and that his negligence caused or contributed to the death of the deceased, notwithstanding that, if the defendant company was in any way negligent in such a manner as to cause or contribute to the cause of the death of the deceased, then the defendant company is liable, and your verdict would be for the plaintiff."

There was evidence that Sanders drove Adler to Manchester for the purpose of attending a dance; that at intermission, about 11:30, they went to the house of one Samara where Adler had the drinks above referred to, and Sanders imbibed an undisclosed number of drinks. Adler then returned to the dance and continued dancing until the dance was almost over. He then looked around for Sanders and found him standing beside his car and in no condition to drive. Adler, accordingly, helped him into the car and took the wheel himself, "just took it because of his condition." He testified as follows: "Q. Why did you do it? A. I saw Mr. Sanders was

incapable of driving himself; that is why I took the wheel. Q. Were you under the influence of liquor at all? A. No, sir, I was not." The defendant predicates its contention that Adler was Sanders' agent upon this proposition: "When Sanders started drinking in the presence of Adler his activity in this respect indicated as clearly as any words he could have spoken a request to Adler that if anything should happen to him he wished Adler to drive him home." We are unable to accept this conclusion, and while we commend the highly moral precept of the Florida court in *Boggs* v. *Butler*, 176 So. Rep. 174, that "it is the policy of the law to withdraw rather than offer inducement to get drunk," it can hardly be regarded as a test of agency and we are unable to discover in the evidence any basis for the conclusion that Adler acted otherwise than as a volunteer in taking charge of Sanders' car. The charge of the court upon this point was correct and defendant's exception is overruled.

The defendant next argues that the plaintiff is barred from recovery by reason of the personal negligence of the deceased. We are told that "Sanders himself was negligent because he knew or should have known that he was being or would be driven home by an intoxicated driver, or because knowing that Adler was drinking, he shouldn't have drunk himself into an unconscious condition." The defendant requested the court to charge the jury as follows: "6. If Sanders was guilty of any negligence which in any way caused or helped to cause the accident, he is not entitled to recover. In determining whether Sanders was negligent, you will consider whether he used such care as the ordinary prudent man would have used under the circumstances to protect himself. As bearing on his due care, you may take into consideration the time of day, the visibility, the character of the road, the amount of travel, Sanders' knowledge of Adler's ability as a driver — whether experienced or not, whether careful or reckless — Sanders' knowledge of Adler's having been drinking during the evening, whether he has reason to believe that Adler was or was not in a condition to drive — any other fact which in any way would tend to prove whether Sanders might or might not, in the exercise of ordinary care, have relied upon Adler to drive with reasonable care. *Salvas* v. *Cantin*, 85 N. H. 489; *Gilbert* v. *Joyal*, 89 N. H. 557."

"7. It is for you to say whether or not Sanders in drinking and going to sleep, exercised that due and reasonable care for his protection which is necessary in order for him to recover in this case. In this connection you may consider whether or not Sanders knew that

Adler had been drinking. You may also consider whether a person of ordinary prudence, with Sanders' knowledge of Adler's condition, would have relied upon Adler to drive."

The court charged the jury in accordance with the plaintiff's ninth request as follows: "If the deceased, Mr. Sanders, was asleep at the time of the collision, that does not mean that he was in any way at fault. If he was asleep, that is not negligence on his part . . ." The court also charged the jury that "It is a well established principle that the plaintiff is barred from recovery if it appears that the plaintiff in any way contributed to the cause of the injury for which recovery is sought" and concluded: "If Sanders was guilty of any negligence which in any way caused or helped to cause the collision, his estate is not entitled to recover. In determining whether or not Sanders was negligent, you will consider whether or not he used such care as the ordinary prudent man would have used under the circumstances to have protected himself."

It is obvious that the issue of contributory negligence thus presented involves two separate and distinct questions: (1) was Sanders negligent in going to sleep before the accident; (2) was Sanders negligent in permitting himself to be driven by Adler? Since upon all the evidence in the case Sanders was unconscious and did not know who was driving his car, the first of these questions was properly decided by the court in favor of the plaintiff as a matter of law. "There is no rule of law requiring a passenger, in the absence of knowledge on his part of unsuitability in his driver, to keep a lookout for peril ahead. He is entitled to rely upon the assumption that his driver will act with due regard for his safety, in the absence of knowledge that such is not in fact the case." *Mason* v. *Andrews*, 86 N. H. 277, 279.

Defendant's presentation of the second question in its requests for instructions is clearly a further development of its theory that Adler was the agent of Sanders at the time of the accident. It is obviously assumed that Sanders' conduct should be judged as though he had consciously selected Adler for a driver, whereas the fact is that he had no voice in the matter at all. Adler, having taken control of the situation as a volunteer, no question of Sanders' judgment in picking him out as a driver could arise, and there is no rule of law which makes a drunken man legally responsible for the conduct of anyone who undertakes to see him home. The defendant says that the case of *Hanson* v. *Railway*, 73 N. H. 395, establishes the proposition that "one may be guilty of negligence by creating a situation where he

finds himself in an emergency in the hands of a drunken driver." The defendant misconceives the scope of the decision in the cited case. It there appeared that the plaintiff was knowingly and without necessity driving with a drunken and incompetent driver.

The whole issue of contributory negligence upon proper instructions will be open at another trial.

The defendant requested the court to charge the jury as follows: "12. The defendant's truck was properly parked if it was left as far off the traveled portion of the highway as practicable, and within clear view for a distance of two hundred feet to cars approaching from the south." This request was denied subject to the defendant's exception and the court charged the jury as follows: "If such truck could have been driven off the road at another location so that it would be clear of the main traveled . . . portion of the highway, and if such failure . . . caused or contributed to the cause of the death of the deceased, then the defendant is liable." The exceptions to the denial of the above request and to the charge raise a question as to the correctness of the court's construction of the statute, which reads in part as follows: "No person shall park or leave standing any vehicle . . . upon the paved or improved . . . portion of any highway, . . . when it is practicable to park or leave such vehicle standing off of the paved or improved . . . portion of such highway." It is argued that by the use of the word "could" in the above instruction, the court construed the word "practicable" to mean "possible." (Laws 1927, c. 76, s. 3.)

We are told that "on the evidence he [the driver of the north-bound truck] *could* have done this farther south. He *could* have done it farther north. He didn't because he waited until he met the defendant's south-bound truck." Viewed in the light of this explanatory statement, the defendant's request would have amounted to a construction of the word "practicable" in the statute as meaning "convenient." This would have been plainly erroneous and the request was properly denied. The charge itself was reasonably accurate as applied to the evidence in the case. There was evidence that there were many places along the road south as well as north of the place of accident where the truck could have been parked completely off the highway. In this situation it was clearly practicable to turn completely off the road wherever it was possible to do so and the defendant was not harmed by the instruction. *Laflamme* v. *Lewis*, 89 N. H. 69, 74. It is unnecessary to decide whether the instruction would be strictly accurate under all conditions.

The defendant three times in varying forms offered to prove that the witness Adler pleaded guilty in the Superior Court to a charge of reckless driving at the time of the accident. The court rejected the offer and the defendant excepted. This ruling was error.

It was an important issue in the case whether the defendant was guilty of causal fault or whether the accident resulted wholly from Adler's negligence. The net effect of Adler's testimony was an assertion that he was driving carefully, and he testified specifically as follows: "Q. Was there anything else you could have done to prevent the accident? A. I don't think so." Although this last answer was an expression of opinion, it was clearly admissible (*Reed* v. *Company*, 84 N. H. 156, 161; *Dimock* v. *Lussier*, 86 N. H. 54, 59; *Kelly* v. *Simoutis*, 90 N. H. 87, 90) and this conclusion fairly implies the admissibility of the witness' statement of a contradictory opinion. 3 Wig. Ev. (3d *ed.*), *s.* 1041. The plea in question fairly expressed such a contradictory opinion. It tended to contradict the "general drift" of Adler's testimony regarding his conduct. *City Bank* v. *Young*, 43 N. H. 457, 460; *Hall* v. *Young*, 37 N. H. 134. It might have assisted the triers of fact in passing upon the credibility of his testimony and they were entitled to this assistance. *Combs* v. *Winchester*, 39 N. H. 13; 3 Wig. Ev. (3d *ed.*), *s.* 1017.

*New trial.*

All concurred.