Anton VAN CEDARFIELD et al.,
Defendants, Appellants,

v.

Arthur LAROCHE, Plaintiff, Appellee.

Anton VAN CEDARFIELD et al.,

v.

Arthur LAROCHE, Administrator, Plain-
tiff, Appellee.

Anton VAN CEDARFIELD et al.,

v.

Doria LAROCHE, Plaintiff, Appellee.

Nos. 5296–5298.

United States Court of Appeals
First Circuit.

March 4, 1958.

Shane Devine, Manchester, N. H., with whom Devine & Millimet, Manchester, N. H., was on brief, for appellants.

Mayland H. Morse, Jr., Concord, N. H., with whom Morse, Hall, Morse & Gallagher, Concord, N. H., was on brief, for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

These three appeals are brought by the defendants from judgments of the United States District Court for the District of New Hampshire entered upon jury verdicts for the plaintiffs in three actions for damages arising out of a collision on September 28, 1955 between an automobile in which the plaintiffs were riding and a truck owned by the defendant, Gilman, and operated by Gilman's agent and employee, Van Cedarfield. The plaintiffs are Arthur Laroche, who sues individually and also as administrator of the estate of his wife, Betty, who died five days later from injuries inflicted in the collision, and Arthur's mother, Doria Laroche.

The accident occurred at about two o'clock in the morning within the city limits of Concord, New Hampshire, on Route 3 which was a paved black top highway about thirty feet wide running north and south. Prior to the collision the defendant, Van Cedarfield, stopped his truck on the easterly side of this highway in front of the gate of a poultry company where he was to deliver his cargo of live chickens. The motor and the headlights of the truck were left on and the right directional signal was left flashing while Van Cedarfield jumped down from the truck to open the gate. The distance from the gate to the edge of the highway was about nineteen feet and the truck was about thirty feet in length. The truck was parked at an angle of about 45 degrees to the gate which was parallel to the road so that the rear end of the truck jutted out at least six feet in the highway.

The truck was of the platform body type with a heavy steel plate across the rear edge of the platform. Seven holes were cut in this steel plate and at a distance ranging between one and three inches behind these holes were seven lights, two of these lights being direction indicators. Because of the recessed position of these lights, the jury could have found that if the rear of the truck was at an angle to a vehicle approaching from the south, the driver of the approaching vehicle would see only the light cast by these lights and not the lights themselves.

The sedan, in which the plaintiffs and Arthur's uncle were riding and which was being driven by the uncle at the time of the accident, was traveling at about forty miles an hour in a northerly direction when it collided with the left rear of the truck, then swerved across the highway and rammed into a telephone pole. The uncle testified that before the collision he saw a flashing red light seventy feet ahead of him on the side of the road and that he then veered slightly to the left believing that the light indicated the parked vehicle was off the highway.

The principal issue raised in these appeals concerns the effect on the defendants' substantial rights of the inclusion in the judge's charge of the following statement: "If the defendants' truck could have been driven off the road at the place of the accident or at another location so that it would be clear of the main traveled portion of the highway, and if the failure to so park it caused or contributed to the cause of the accident, then the defendants would be liable."

This charge is identical with the plaintiff's fifth request for instructions and is derived from Sanders v. H. P. Welch Co., 1942, 92 N.H. 74, 26 A.2d 34, 39. In the Sanders case the fault of the defendant in stopping his truck on the highway was governed by a statute which read: "No person shall park or leave standing any vehicle, * * * upon the paved or improved * * * portion of any highway, * * * when it is practicable to park or leave such vehicle standing off of the paved or improved * * * portion of such highway." Laws 1927, c. 76, § 3. The Supreme Court of New Hampshire held that the above quoted charge was "reasonably accurate as applied to the evidence" as "it was clearly practicable to turn completely off the road wherever it was possible to do so and the defendant was not harmed by the instruction." The court also added the comment that "It is unnecessary to decide whether the instruction would be strictly accurate under all conditions."

■■ Both parties to these appeals do not contest the correctness of the trial judge in ruling that in its present form, N. H. Rev.Stat.Ann., c. 263, § 50, the New Hampshire parking statute was not applicable to the factual situation in the instant case. In the absence of a statute it is clear that the act of the defendants in parking their truck so that a portion of it extended into the highway, should be considered by the jury solely from the point of view of whether such act constituted negligence at common law. See MacDonald v. Appleyard, 1947, 94 N.H. 362, 366, 53 A.2d 434, 437. In fact, the plaintiffs concede in their brief that the jury was entitled to consider the issue of whether the truck driver's conduct in parking his truck where he did was reasonable or not. The instruction of the trial judge erroneously withdrew from the jury this issue of whether or not the defendants were so lacking in reasonable care in parking their truck, for in effect the only issue left to the jury was the narrow factual question of whether the defendants could have driven their truck off the highway and parked it in another location. It should be noted that the only possible inference that could be made from the evidence is that it was possible for the truck to have been parked completely off the highway north of the gate where the collision occurred. Because of this factual situation the court's erroneous instruction as a practical matter required the jury to find that the defendants were negligent without determining whether the defendants had been reasonable in their conduct.

■ Plaintiffs contend that this charge is cured by the judge's other instruction defining the standard of care to be applied by the jury in determining the existence of negligence. In our opinion the error in this charge, which was expressed in such a way as to apply directly to the undisputed facts brought out at the trial, was not sufficiently cured by general statements correctly defining the law of negligence for while the jury had been given these legally correct in-

structions, their utilization was prevented because of the judge's explicit instructions limiting their decision to the issue of the ability of the defendants to have parked their truck off the highway.

■ A subsidiary question raised by the appellants, which even though decided in their favor would not require reversal because it did not affect their substantial rights, concerns the correctness of the trial judge in excluding from the evidence certain documents offered by the defendants which purported to prove joint ownership of the automobile by Arthur Laroche and his wife. Such joint ownership would have been of considerable importance if the jury had found the driver of the sedan guilty of contributory negligence. The judge excluded the documents as not properly authenticated under Fed.Rules Civ.Proc. rule 44, 28 U.S.C.A., or 28 U.S.C. § 1739 (1952). The documents consisted of a photostatic copy of an "Application for a Title for a Motor Vehicle" which stated that a certain Ford sedan was owned jointly by Arthur and Betty Laroche and was signed by a deputy of the Manager of Revenue of Denver, Colorado; a certificate bearing the signature of a section chief acting for Robert A. Theobald,

the Director of Revenue of the State of Colorado, certifying that attached document was a true photostatic copy of an original which was on file in his department; and a certificate by the Secretary of State of Colorado under the great seal of the State of Colorado certifying as to the correctness of an attached executive order appointing Robert A. Theobald Director of Revenue.

28 U.S.C. § 1739 [1] enacted under U.S. Const. Art. IV, § 1 provides the means whereby an official record of one state may be authenticated for use in the court of another state. Under such statute the certificate of the Secretary of State must certify that the attestation of the custodian of the official records "is in due form and by the proper officers." It has been held that such a certificate is a prerequisite of admission. Reed v. Stevens, 1921, 120 Me. 290, 113 A. 712, Bay State Wholesale Drug Co. v. Whitman, 1932, 280 Mass. 188, 182 N.E. 361; 20 Am.Jur. § 989. Clearly this certificate of the Secretary of State does not comply with the technical requirements of this statute.

■ However, the federal courts are provided with Fed.R.Civ.P. 44 [2] for

[1]. "All nonjudicial records or books kept in any public office of any State, Territory, or Possession of the United States, or copies thereof, shall be proved or admitted in any court or office in any other State, Territory, or Possession by the attestation of the custodian of such records or books, and the seal of his office annexed, if there be a seal, together with a certificate of a judge of a court of record of the county, parish, or district in which such office may be kept, or of the Governor, or secretary of state, the chancellor or keeper of the great seal, of the State, Territory, or Possession that the said attestation is in due form and by the proper officers.

"If the certificate is given by a judge, it shall be further authenticated by the clerk or prothonotary of the court, who shall certify, under his hand and the seal of his office, that such judge is duly commissioned and qualified; or, if given by such Governor, secretary, chancellor, or keeper of the great seal, it shall be under

the great seal of the State, Territory, or Possession in which it is made.

"Such records or books, or copies thereof, so authenticated, shall have the same full faith and credit in every court and office within the United States and its Territories and Possessions as they have by law or usage in the courts or offices of the State, Territory, or Possession from which they are taken."

[2]. "(a) Authentication of Copy. An official record or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied with a certificate that such officer has the custody. If the office in which the record is kept is within the United States or within a territory or insular possession subject to the dominion of the United States, the certificate may be made by a judge of a court of record of the district or political subdivision in which the record is kept,

guidance in the admission of official records. In the instant case it is seen that the certificate of the Secretary of State does not certify that the Director of Revenue has custody of the records of applications and thus, technically, it does not meet the requirements of 44(a). However, we do not have to sustain the trial court's exclusion on such narrow technical grounds because these proffered records are defective for another reason. This is that the certificate, which is signed by only a deputy of the Director of Revenue, lacks the seal of the office of Director of Revenue despite the fact that Col.Rev.Stat. c. 13, Art. 2, § 5 states that the Director of Revenue has such a seal and that "copies of any * * * papers filed in his office may be authenticated by him or his deputy under said seal * * * and when so authenticated shall be evidence equally with and in like manner as the originals and may be received by the courts of this state as evidence of the contents." See 5 Wigmore Evidence, § 1679 (3rd Ed. 1940). The importance of the lack of such seal is intensified by the fact that while the certificate of the Secretary of

State conclusively proves that Robert A. Theobald was the Director of Revenue, the certificate purporting to come from his office bears neither his signature nor the seal of his office.

■ Under Fed.R.Civ.P. 44(c) official records may also be proved by the rules of evidence at common law, but it appears that New Hampshire does not provide any means of authentication other than by exemplification, oral testimony of comparison and certificate by the custodian of the record whose certificate is also authenticated, Hutchins v. Gerrish, 1872, 52 N.H. 205, 13 Am.Rep. 19, and the means provided under 28 U.S.C. § 1739. The defendants' proffered evidence clearly does not meet these requirements.

The other points raised by the appellants are without substantial merit, but in view of the possible prejudicial effect of the judge's erroneous instruction, the appellants are entitled to a new trial.

The judgments of the district court are vacated, the verdicts are set aside, and the cases are remanded to that court for a new trial.

authenticated by the seal of the court, or may be made by any public officer having a seal of office and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of his office. * * *

"(c) *Other Proof*. This rule does not prevent the proof of official records or of entry or lack of entry therein by any method authorized by any applicable statute or by the rules of evidence at common law."