**Thomas S. GILES, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 86–178.

District of Columbia Court of Appeals.

Submitted Feb. 3, 1988.
Decided Sept. 9, 1988.

Julian L. Nugent, Jr. Washington, D.C., for appellant.

George Valentine, Asst. Corp. Counsel, with whom James R. Murphy, Acting Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Jay B. Stephens, U.S. Atty. and Michael W. Farrell, Elizabeth Trosman, and Kenneth W. Cowgill, Asst. U.S. Attys., Washington, D.C., filed a brief on behalf of the U.S. as amicus curiae.

Before FERREN, TERRY and STEADMAN, Associate Judges.

FERREN, Associate Judge:

In a civil forfeiture action pursuant to D.C. Code § 33–556 (1988 Repl.), Judge McArdle ordered appellant Giles to forfeit $196.00 upon finding, after a bench trial, that appellant and his brother had received the money from a sale of heroin and cocaine to a Mr. Holmes. Giles appeals, alleging that the trial court erred in admitting an improperly authenticated chemist's report of the Drug Enforcement Agency (DEA). We disagree and thus affirm.

## I.

On November 29, 1983, appellant Giles and his brother were arrested for distribution of heroin and cocaine. The police found $196.00 on appellant. The next day, the government "no-papered" the criminal charges. The District of Columbia, however, commenced forfeiture proceedings against appellant on the ground that the $196.00 was cash or currency used, or intended for use, in violation of the Uniform Controlled Substances Act. D.C. Code § 33–552(a)(6) (1988 Repl.).

On December 10, 1984, the government furnished Giles with a "Notice of Compliance" and attached to it a copy of a DEA chemist's report composed of two documents: (1) an official report setting forth results of the chemical analysis (DEA Form 7) of the substances seized from Holmes and (2) a notarized "Report of Chain of Custody and Certificate of Compliance Pursuant to 33 D.C. Code § 556" (report and certificate). The notarized report and certificate bearing the chemist's signature was on United States Department of Justice, Drug Enforcement Administration stationery showing a printed seal of the Department of Justice. In this report and certificate, the chemist certified that she was a chemist employed by DEA, described the chain of custody of controlled substances received by DEA for analysis, stated that the results of her analysis were accurately set forth in the DEA Form 7, and certified that she was "the officer hav-

ing legal custody of this report and of the attached official report of analysis, DEA Form 7." The chemist signed the DEA Form 7 as the analyst, and the laboratory chief also signed to indicate that he had approved the report. In the Notice of Compliance, the government set forth the suggested procedures for subpoenaing the chemist at trial. Giles made no effort to subpoena the chemist.

On April 12, 1985, Giles submitted a pretrial memorandum to the court on the issue of admissibility of police reports as impeachment or substantive evidence. At the time of this memorandum, the trial was scheduled for April 24, 1985. Neither in this nor in any other pretrial submission did Giles raise the issue of the admissibility of the chemist's report.

Trial commenced on October 8, 1985. On the first day of trial, before the government called its first witness, Giles orally raised as a "preliminary comment or request" that he planned to object to the admission of the chemist's report "at an appropriate time." The court responded that it would admit the report, noting "I've admitted that report I do not know how many times, maybe 150. ... I'm not going to reverse myself." The government did not seek a continuance to correct any formal imperfection in the report. The trial lasted one day.

During trial, Giles objected to the government's introduction of the chemist's report, alleging that it was not authenticated in compliance with the requirements of D.C.Code § 33–556 (1988 Repl.), which provides:

> In a proceeding for a violation of this chapter, the official report of chain of custody and of analysis of a controlled substance performed by a chemist charged with an official duty to perform such analysis, when attested to by that chemist and by the officer having legal custody of the report and accompanied by a certificate under seal that the officer has legal custody, shall be admissible in evidence as evidence of the facts stated therein and the results of that analysis. A copy of the certificate must be

furnished upon demand by the defendant or his or her attorney in accordance with the rules of the Superior Court of the District of Columbia or, if no demand is made, no later than 5 days prior to trial. In the event that the defendant or his or her attorney subpoenas the chemist for examination, the subpoena shall be without fee or cost and the examination shall be as on cross-examination.

Giles argued, more specifically, that § 33–556 required the chemist and the legal custodian of the report to be different persons and that, in any event, a notarial seal cannot satisfy the statutory requirement for "a certificate under seal that the officer has legal custody." The court overruled the objection and admitted the report.

In response to the trial court's October 11, 1985 order of forfeiture, Giles moved for a judgment notwithstanding the verdict on the ground that the court erred in overruling his objection and admitting the chemist's report. In support of the motion, Giles restated the two arguments presented at trial. After the government had filed an opposition and Giles had filed a reply, the trial court denied the motion. Giles appealed.

After briefs had been filed, this court *sua sponte* invited the United States to file a brief as *amicus curiae* and also invited all the parties to file supplementary briefs on two issues, including the question "[w]hether a defendant who receives a certificate pursuant to § 33–556 'no later than 5 days prior to trial' waives any objection to admission of the certificate into evidence (subject to impeachment at trial) if the defendant has not challenged its admissibility through a pretrial motion."

II.

■ Having reviewed the supplementary briefs, we conclude we cannot dispose of this case on the ground of waiver. Under § 33–556; the government is obliged to turn over to the defense a copy of the chemist's report on which it intends to rely "no later than five days prior to trial." The obvious purpose of this provision is to give sufficient notice to the defendant to

decide whether to call the chemist for cross-examination ("the chemist would still appear if subpoenaed and would be subject to cross examination by the defense if called." COMM. ON THE JUDICIARY, REPORT ON BILL 4-123, "the District of Columbia Uniform Controlled Substances Act of 1981" (Report on Bill 4-123), April 8, 1981, at 9). We do not believe, however, that the statute implies that the failure to object to the form of the certificate before trial—before it is offered into evidence—waives objection to admission of the certificate at trial. A defendant does not generally have an obligation to file a pretrial motion to exclude documentary material, discovered before trial, which the defense knows or believes the government will attempt to use but which may be inadmissible for some reason.

It is true, of course, that D.C. Code § 23-104(a)(2) (1981) requires a pretrial motion "to suppress evidence ... unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion." *See also* Super.Ct.Crim.R. 12(b)(3) incorporating Super.Ct.Crim.R. 47-I. The threshold question, therefore, is the meaning of the word "suppress." Historically, that term has meant exclusion of evidence on the ground that it was illegally obtained as a result, for example, of an unlawful search or of a coerced confession. *District of Columbia v. McConnell*, 464 A.2d 126, 128 (D.C.1983). Correspondingly, the government has been allowed to appeal pretrial suppression motions.

In contrast, for a long time government appeals were not allowed from pretrial rulings that may have excluded but did not "suppress" evidence. In 1971, however, Congress amended the applicable federal statute, as well as the District of Columbia Code, to permit a pretrial government appeal not only from an order that "suppresses" evidence but also from an order that "otherwise denies the prosecutor the use of evidence at trial" (provided the appeal is not taken for the purpose of delay and the particular evidence provides substantial proof of the pending charge). 18 U.S.C. § 3731 (1982); D.C.Code § 23-104(a)(1) (1981). Significantly, however, in liberaliz-

ing the government's right to appeal pretrial evidentiary rulings, Congress did not amend subsection (a)(2), which to this day mandates pretrial motions only "for return of seized property or to suppress evidence." In other words, except for motions to suppress illegally obtained evidence, Congress has not mandated pretrial motions that would deny "the prosecutor the use of evidence at trial."

In short, we find no statute or rule obligating a defendant to file a pretrial "nonsuppression" motion to exclude a chemist's report delivered before trial under § 33-556, although clearly there is no provision that would prevent a defendant from doing so or preclude the court from granting the motion and allowing the government to take a pretrial appeal under § 23-104(a)(1). Absent such a requirement, however, there is no basis for concluding that the defendant here waived his right to object at trial to the form of the chemist's report under § 33-556. *See United States v. Pent-R-Books, Inc.*, 538 F.2d 519, 528 (2d Cir.1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977).

If we were to require, by judicial fiat, the filing of a pretrial motion to exclude the chemist's report, absent a statute or rule requiring such a motion, that ruling obviously would pose serious notice problems if applied to a case such as this one. Indeed, if we were to cite Super.Ct.Crim.R. 12(b)(3) by analogy, which itself incorporates Super.Ct.Crim.R. 47-I, we would be invoking rules that do not prescribe time limits even remotely close to the limits that would have to apply in a case such as this; Rule 47-I(c) requires filing of the motion "within 10 days of arraignment or entry of appearance of counsel, whichever date is later, unless otherwise provided by the Court." Probably at most, therefore, when the report is turned over no earlier than five days before trial, we could only require the filing of a motion to exclude the chemist's report sometime "before trial." But, absent guidelines, that could literally be minutes before trial, which would not help the government very much. We therefore do

not believe, under the circumstances, that a defendant should be out of court for failing to do that. The government could always move for a brief continuance to get the chemist to court when the form of the report is challenged, so there is not likely to be prejudice. We might suggest that the Superior Court Rules Committee propose a cure for the problem by rule, if it wants to, but we should not find a "waiver" in this particular case.

### III.

We turn to appellant's central argument, objecting to admissibility of the chemist's report under § 33–556 on two grounds: First, he says, for use of this statutory exception to the hearsay rule, the chemist may not have acted both as the reporter of chain of custody and of analysis of the controlled substance *and* as the custodian of that report. Second, he argues, even if the chemist may have the dual roles of reporter and custodian, the chemist herself may not self-authenticate both the correctness of the report *and* her own legal custody of it by signing a statement under oath verified by the signature and seal of a notary public; some other public officer in a position to certify custody of the report must perform that function under seal of the office.[1]

### A.

■ We perceive no basis for concluding that, for admissibility under § 33–556, the custodian of the report of a controlled substance must be someone other than the chemist who performed the analysis and prepared the report. In the first place, the statutory language does not address the issue. Its references to attestation by the "chemist" and by the "officer having legal custody of the report" are neutral as to whether the chemist and the officer may or

may not be the same person; the language is compatible with either alternative. Second, the legislative intent underlying enactment of § 33–556—a local provision not part of the Uniform Controlled Substances Act—was to relieve chemists from having to testify. As this case indicates, chemists act as custodians of their own reports—hardly a radical notion. The record does not tell us whether this practice existed at the time § 33–556 was enacted, but we do know the Council perceived at the time that the chemist was responsible for personally verifying the chain of custody of the controlled substance up to the time the chemist's report was prepared, for the Committee Report noted that § 33–556 not only would relieve the chemist from "the necessity of appearing at trial to vouch for the results of the analysis" but also "from the necessity of appearing at trial to vouch personally for the chain of custody of substances received by the chemist from the time of receipt and the results of his or her analysis...." Report on Bill 4–123 at 8, 37. It would be unusual, therefore, if the Council had intended its new evidentiary rule, § 33–556, to preclude chemists from continuing to act as custodians after completion of their reports, so that unless a new custodial scheme were instituted, the chemist would still have to testify. There is simply no indication that the Council intended such a byproduct of its fundamental intention to reduce the need for chemists to testify.

### B.

Appellant's second issue is more problematic: whether under § 33–556 the chemist can self-authenticate her legal custody of the report by providing a "certificate under seal" of a notary public. D.C.Code § 33–556 (1988 Repl.). The statutory language does not say who is to provide "a certificate under seal that the officer has

---

1. D.C.Code § 33–556 (1987 Supp.) applies "[i]n a proceeding for a violation of this chapter," meaning the Uniform Controlled Substances Act, D.C.Code §§ 33–501 to –567 (1988 Repl.). That Act establishes crimes, but it also includes provisions authorizing forfeitures, as in this case. Although it may be difficult to characterize a forfeiture proceeding under § 33–552 as an

 alleged "violation" of the chapter—of the Uniform Controlled Substances Act—it is certainly ancillary to such alleged violations. Thus, there is a strong implication that § 33–556 should be applicable to all proceedings under the Act (chapter 33), not just to criminal proceedings. None of the parties questions the applicability of § 33–556 to this case.

legal custody." *Id.* There is, however, a common law history underlying the admissibility of certain records into evidence without a testimonial foundation. That history should inform our analysis, since the plain language of the statute is not self-explanatory and the Council Report itself does not provide a clue.

For clarification, we assume for purposes of appeal that the government introduced into evidence the original, notarized chemist's report and certificate, with either the original or a true copy of the DEA Form 7 attached to it. That exhibit is missing from the record on appeal and has not been found by the government, but we believe the assumption about introduction of the original report and certificate is sound; presumably, the trial court would not have admitted a copy of a record into evidence without an original sealed certificate (absent a testimonial foundation). There is a wrinkle, however. The report and certificate itself refers to "the attached official report of analysis, DEA Form 7" and, again, to "the attached official report, DEA Form 7," implying that the original DEA Form 7 was attached to the original report and certificate introduced into evidence. In its brief, however, the government says that the chemist tendered "a true and correct copy of the original report," which we believe refers to the DEA Form 7. Accordingly, we must assume both possibilities and analyze the case as though we are dealing with an original chemist's report and certificate, coupled with either the original DEA Form 7 or a copy of it.

Turning to the merits, we begin by noting that the statute authorizes evidentiary use of either a certified original or copy of the DEA Form 7 and that the chemist's report, including the DEA Form 7, could have been admitted as a business record under Super.Ct.Civ.R. 43–I(a). *See Howard v. United States,* 473 A.2d 835, 837–40 (D.C.1984) (admissibility of certified copy of chemist's report under § 33–556 and Super.Ct.Crim.R. 57, which incorporates Super.Ct.Civ.R. 43–I). For such admissibility, however, the chemist or other custodian, or conceivably someone else in a position to know, would have had to provide a foundation by testifying at trial, perhaps in conjunction with other evidence, that the report was made in the regular course of business, that the regular course of business included preparation of such a report, and that the report was made within a reasonable time after the analysis of the controlled substance. *See In re D.M.C.,* 503 A.2d 1280, 1282 (D.C.1986); *see also Martini Hairdressers, Inc. v. Potomac Beauty Supply Co., Inc.,* 203 A.2d 200, 201 (D.C.1964) (discussing foundation required for admissibility of business record under 28 U.S.C. § 1732, the former "federal shopbook rule," substantially incorporated into Super.Ct.Civ.R. 43–I(a)). A photographic copy of the original report, if copied in the regular course of business, would also be admissible "when satisfactorily identified" at trial, "whether the original is in existence or not." Super.Ct.Civ.R. 43–I(b).

■ The key to admissibility of a business record as an exception to the hearsay rule, therefore, is the foundation provided by the testimony of someone in a position to verify that "the records were maintained in the regular course of ... business operations." *Martini Hairdressers, Inc.,* 203 A.2d at 201. By the late 1970s, however, the large number of chemist's reports introduced as evidence in criminal trials had made the requirement of a testimonial foundation unduly burdensome. Accordingly, the Council of the District of Columbia enacted § 33–556 in order to "relieve the chemist responsible for analyzing controlled substances from the necessity of appearing at trial to vouch personally for the chain of custody of substances received by the chemist from the time of receipt and the results of his or her analysis when such results are not in dispute." Report on Bill 4–123 at 37. Presently, therefore, a chemist's report may be admitted into evidence under § 33–556, without need for a testimonial foundation, if four requirements are met: (1) the "analysis of a controlled substance [must be] performed by a chemist charged with an official duty to perform such analysis," (2) an "official report of chain of custody and of analysis of [the]

controlled substance" must be "attested to by that chemist," (3) the chemist's official report must be "attested to ... by the officer having legal custody of the report," and (4) the official report must be "accompanied by a certificate under seal that the officer has legal custody."

In eliminating the testimonial foundation requirement here, the Council in effect extended admissibility of a chemist's report from the business records exception to a business records-type subset of the official records exception to the hearsay rule. Traditionally, on the assumption that an original public record should not continually be removed from the file, a copy of an "official record" or "public record" or "official statement" has been admissible into evidence, without supporting testimony, if the public officer having legal custody attests that the document is a copy of the record or statement *and* if an appropriate person certifies under seal that the attesting officer has legal custody. For example, Super. Ct.Civ.R. 44(a)(1) provides:

> An official record kept within the United States, or any state, district, commonwealth, territory or insular possession thereof, or within the Panama Canal Zone, the Trust Territory of the Pacific Islands, or the Ryukyu Islands, or an entry therein, when admissible for any purpose, may be evidenced [1] by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and [2] *accompanied by* a certificate that such officer has the custody. *The certificate* may be made by a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of the court, or *may be made by any public officer having a seal of office and having official duties in the district or political subdi-*

*vision in which the record is kept, authenticated by the seal of his office.*
(Emphasis added.) [2] Rule 44(a)(1) (which is identical to Fed.R.Civ.P. 44(a)(1) in effect elaborates the requirements of D.C.Code § 14–501 (1981):

> An exemplification of a record under the hand of the keeper of the record, *and the seal of the court or office where the record is made,* is good and sufficient evidence to prove a record made or entered in any State, territory, commonwealth or possession of the United States. The certificate of the person purporting to be the keeper of the record, accompanied by the seal, is prima facie evidence of that fact.

(Emphasis added.)

Similarly, § 33–556, at issue here, provides for admissibility of the chemist's "report of chain of custody and of analysis ... when attested to by that chemist and by the officer having legal custody of the report *and* accompanied by a certificate under seal that the officer has legal custody...." (Emphasis added.) Therefore, whether a portion of the report is an original or a copy, a certificate under seal verifying legal custody must accompany the report. Unlike § 14–501 and Rule 44(a)(1), however, § 33–556 is silent as to who may supply the "certificate under seal." The question, then, in context, is whether (1) under § 33–556 the chemist/custodian may self-authenticate her report, or a copy of it, by appearing before a notary public or, instead, (2) § 33–556 incorporates the traditional requirement, reflected in § 14–501 and Rule 44(a)(1), that, unless the chemist herself has a seal of office, her custodianship must be certified by a higher officer of government who does have a seal and, by virtue of working in the district or office where the record is kept, knows her custo-

---

**2.** Super.Ct.Civ.R. 44(a)(1) is identical to Fed.R. Civ.P. 44(a)(1). The Federal Rules of Evidence also deal with authentication. "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency," for example, may be admitted "unless the sources of information or other circumstances indicate a lack of trustworthiness," Fed.R.Evid. 803(8),

provided the record is authenticated, for example, by the seal of the officer signing the document, Fed.R.Evid. 902(1), or by another officer who is in a position to certify that "the signer has the official capacity and that the signature is genuine," Fed.R.Evid. 902(2). Similarly, a certified copy of a public record is admissible if certified in compliance, for example, with Fed. R.Evid. 902(1) or (2).

dial status. The answer must take into account the reasons why the certification of custodianship, under seal, has been required.

Traditionally in this country, in contrast with the common law of England, "the lawful custodian of a public record has, by implication of his office, and without express order, an authority to certify copies" of that record. 5 WIGMORE ON EVIDENCE § 1677, at 857 (Chadbourn ed. 1974) (citing *United States v. Percheman*, 32 U.S. 51, [84, 85], 86, 8 L.Ed. 604 (1833) (Marshall, C.J.); *see* McCORMICK ON EVIDENCE § 320, at 897–898 (3d ed. 1984). This authority suggests two documents for which exception to the hearsay rule must be found if the public record is to be introduced into evidence: the public record itself and the certificate of the custodian's authority. *See id.*

As to the first—the "official written statement" or "public record" or "official report" itself—special trustworthiness is implied by "the declarant's official duty and the high probability that the duty to make an accurate report has been performed." *Id.* § 315, at 889. For the chemist/custodian's report to be admissible as a "public record," therefore, she must substantiate the chain of custody and her chemical analysis by attesting that the facts reported are within her personal knowledge and that she prepared the report under a duty to do so. *See* D.C.Code § 33–556; *In re D.M.C.*, 503 A.2d at 1283–84. Her affidavit of December 5, 1984 covers those criteria.

We turn to the "certificate under seal that the officer has legal custody." D.C. Code § 33–556. It obviously serves to evidence the authority and incumbency of the particular custodian, *see id.;* Super.Ct.Civ. R. 44(a)(1), as well as the genuineness of the custodian's signature. *See* 5 WIGMORE ON EVIDENCE § 1679, at 875. And, of course, the seal also serves to authenticate the certifying official's own authority and genuine signature. *See* 7 WIGMORE ON EVIDENCE, §§ 2166, 2167, at 806 (Chadbourn ed. 1978). Accordingly, a custodian herself could certify a record in her custody, without a separate certification of her custody by another department official, if she possessed an official seal. Absent that tool of self-authentication, however, a hearsay statement of a higher public official, in the form of a certificate under seal, has traditionally been required to verify the authority, incumbency, and signature of the custodian who lacked a seal. *See* Super.Ct.Civ. R. 44(a)(1).

The seal serves two functions. First, it implies a genuine signature—it stands in the way of a forgery—because someone who possesses the required seal presumably is a trustworthy official familiar with the custodian's signature. *See* 7 WIGMORE ON EVIDENCE §§ 2166, 2167, at 806; McCORMICK ON EVIDENCE § 315, at 889. Second, the seal confirms the certifying official's authority to certify the custodian's authority and personal incumbency. Certification under seal by an official other than the custodian, therefore, has been deemed necessary on occasion, not because the custodian is not thought trustworthy (indeed, she can certify the public record, *see Percheman*, 32 U.S. (7 Pet.) at 84–85), but because, without her own seal, there is no way to overcome the hearsay objections—authority, incumbency, signature—to the custodian's own signed certificate.

By the time of the 1966 amendments to the Federal Rules of Civil Procedure, the Committee on Federal Rules of the Ninth Circuit Judicial Conference had suggested eliminating from Rule 44(a)(1) "the requirement of a certificate that the attesting officer has custody of the record." 36 F.R.D. 209, 230 (1964). Professor (later Judge) Kaplan, who chaired the Advisory Committee on Civil Rules, later wrote that "[t]here was something to be said for eliminating the requirement of a certificate for domestic records" and added that "perhaps the Advisory Committee on Rules of Evidence should recur to this point." Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments to the Federal Rules of Civil Procedure (II)*, 81 HARV.L.REV. 591,

611 n. 294 (1968).[3] Professors Wright and Miller agree that the separate certificate of custodianship requirement of Rule 44(a)(1) is a "needless formality." 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2434, at 389 (1971).

Several federal courts of appeal, nonetheless, have excluded such documentary evidence for failure to comply with this separate certificate requirement, *see e.g., Celanese Corp. of America v. Vandalia Warehouse Corp.*, 424 F.2d 1176, 1180 (7th Cir.1970); *Chung Young Chew v. Boyd*, 309 F.2d 857, 866 (9th Cir.1962); *Mullican v. United States*, 252 F.2d 398, 402 (5th Cir.1958); *Van Cedarfield v. Laroche*, 252 F.2d 817, 820–21 (1st Cir.1958). The only exception to strict application of the rule appears to be when the appellate court, in lieu of requiring a seal certifying custody, is in a position to take judicial notice of a public official's custody of a particular type of document. *See Smith v. United States*, 122 U.S.App.D.C. 300, 306, 353 F.2d 838, 844 (1965), *cert. denied*, 384 U.S. 974, 86 S.Ct. 1867, 16 L.Ed.2d 684 (1966) (Deputy Police Chief's custody of records of pistol licenses).

Before analyzing whether § 33–556 should be construed—as appellant contends—to require a DEA official, other than the chemist/custodian, to supply a certificate under seal as to legal custody, it will be useful to understand the implications. Such a statutory policy would be derived from the answer to this question: because the chemist/custodian lawfully could certify her own report *and* custodianship (without need for corroboration) *if* she had an official seal of her own, is there any reason to say that the chemist's own word is not good enough were she to proffer, instead of her own seal, the seal of a notary public, who may not know her status, rather than the department seal of a colleague who personally does know her status? If the answer is "yes," the legislature would be saying, in effect: corroboration of official custodianship by a second department official is necessary for either

of two reasons: (1) an authorized custodian who is not supplied with her own seal is the type of person who, though truthful enough to be trusted to certify public records, is not likely to be truthful enough to certify her own custodianship, even when signing under oath before a notary public, or (2) there is a real danger, despite the penalty for perjury, that someone will pretend to the notary to be a custodian and certify nonrecords or records not in her custody. The first possibility is absurd, and, at least with respect to chemist's reports, we believe the second possibility is highly unlikely. There may be types of records, for example a birth certificate, where the risks of an imposter as custodian are sufficiently high to require two signatures from the same department—the custodian and the higher official with a seal—in order to provide sufficient assurance of trustworthiness. But that concern is much less likely when a government chemist's report is at issue. It is difficult to imagine who would have an interest in pretending to be a custodian and falsifying such a report, under penalty of perjury, on behalf of the government. And it is even more difficult to imagine when it is known that the custodian happens to be the chemist, and thus the pretender would also have to falsify a report that supposedly she, herself, not only prepared but also, as in this case, had approved by the co-signature of her laboratory chief.

As an alternative to admissibility of public records certified in the traditional manner, the Federal Rules of Evidence provide for admissibility of "acknowledged documents," namely those "accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public or other officer authorized by law to take acknowledgments." Fed.R.Evid. 902(8). The Advisory Committee noted: "In virtually every state, acknowledged title documents are receivable in evidence without further proof.... If this authentication suffices for documents of the impor-

---

**3.** "The proposed [now adopted] Federal Rules of Evidence would dispense with the certificate if a public seal is on the document. Compare Rule 902(1) with Rule 902(2), 51 F.R.D. 452." 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2434, at 389 n. 30 (1971).

tance of those affecting titles, logic scarcely permits denying this method when other kinds of documents are involved." FEDERAL JUDICIAL PROCEDURE AND RULES, Rule 902, at 342 (1987 ed.). At least as to chemist's reports, we agree. There appears to be no greater risk of untrustworthiness from a chemist/custodian's self-authentication before a notary public than from authentication by the seal of a higher department official.

■ Section 33–556 arguably incorporates the traditional requirement of a separate certificate under seal, signed by a higher public official, to evidence custodianship when the custodian herself does not have a seal. But, the statutory language—"accompanied by a certificate under seal that the officer has legal custody"—does not expressly say so. That language is sufficiently broad to encompass any certificate under seal that serves the traditional purpose of such a certificate. Absent plain language or legislative history that would dictate a particular interpretation, and mindful of our responsibility in such a situation to try to effectuate the legislative purpose in a way that avoids "absurd results" and "obvious injustice," *Peoples Drug Stores v. District of Columbia*, 470 A.2d 751, 754 (D.C.1983) (en banc), we conclude that the better interpretation of § 33–556 would be an expansive one. We therefore hold that § 33–556 incorporates commonly-accepted authentication procedures involving a "seal," such as Fed.R. Evid. 902(8) governing acknowledgments before notaries public.[4] The chemist/custodian's report and certificate complied with this requirement.

*AFFIRMED.*

---

4.  Our interpretation of D.C.Code § 33–556 does not run afoul of D.C.Code § 14–501, quoted earlier, on exemplification of records accompanied by "the seal of the court or office where the record is made," since D.C.Code § 14–507 (1981) provides that the chapter on documentary evidence, including § 14–501, "does not prevent the proof of records or other documents by any method authorized by other laws or rules of court."