Peter M. HOWARD, Appellant,

v.

UNITED STATES, Appellee.

No. 83–342.

District of Columbia Court of Appeals.

Submitted Dec. 9, 1983.

Decided Feb. 23, 1984.

Fred Emile Ringe, Jr., Washington, D.C., appointed by this court, was on the brief, for appellant.

Daniel M. Cisin, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Michael W. Farrell and Christopher A. Myers, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before PRYOR and BELSON, Associate Judges, and GALLAGHER, Associate Judge, Retired.

GALLAGHER, Associate Judge, Retired:

In an indictment filed on November 25, 1981, appellant was charged with three counts of selling heroin and three counts of heroin possession, all in violation of § 33–502 of the former Uniform Narcotics Act, D.C.Code § 33–502 (1981), *repealed by* D.C. Uniform Controlled Substances Act, D.C. Code §§ 33–501 to –567 (1983 Supp.). The case was dismissed on July 6, 1982 for want of prosecution. A second indictment charging the same offenses was returned on July 21, 1982. Following a trial that commenced on January 25, 1983, a jury convicted appellant of all counts. In this appeal, appellant contends that the use of hearsay evidence denied him the right to confront witnesses and that he was also denied his right to a speedy trial. We affirm.

Evidence presented by the government indicated that on three separate occasions, an undercover police officer, Winston Starke, purchased heroin from appellant. In May of 1981, Officer Starke was participating in an investigation of illegal drug transactions that were reportedly occurring with frequency in the area of Martin Lu-

ther King, Jr. Avenue and Talbert Street, Southeast.

On May 5, 1981, appellant approached Starke and offered to sell him a "quarter" of heroin for $40. Starke gave appellant the requested sum and, in return, was handed a small packet of heroin. On the following day, Starke selected appellant's photograph from a photo array.

Officer Starke again agreed to purchase heroin from appellant on May 13, 1981. On that day, after Starke had tendered $40, appellant directed him to an individual who gave Starke a small packet of heroin. In the final transaction on June 4, 1981, again in the area of Martin Luther King, Jr. Avenue and Talbert Street, appellant handed Starke a small packet of heroin after receiving $35. On July 14, 1981, Starke led other police officers to appellant, who was then placed under arrest.

After each purchase, Starke turned over the heroin to his supervisors, Investigators Lee Holdsworth and David Hayes. The heroin was then forwarded to the Drug Enforcement Agency (DEA) for analysis. At trial, the court overruled appellant's objection and allowed the supervising officers to read to the jury the results of the DEA chemical analyses from certified copies of the DEA reports. The reports were then admitted into evidence. Those reports were the only evidence of the identity and quantity of the drugs purchased from appellant. The chemists who tested the heroin were not called to testify.

I

Appellant contends that admission of the written reports violated his Sixth Amendment right to confront witnesses. The government, on the other hand, asserts that the reports were properly admitted pursuant to both D.C.Code § 33–556 (1983 Supp.) of the recently enacted Uniform Controlled Substances Act [1] and Super.Ct.

---

1. Although appellant's prosecution arose under the former Uniform Narcotics Act, the applicability of § 33–556 of the newly enacted Uniform Controlled Substances Act to the proceed-

ings was not raised at trial. In any event, application of the statute did not constitute error. As we state, *infra,* the DEA report was also admissible pursuant to the "business

Crim.R. 57, which incorporates Super.Ct. Civ.R. 43–I, the "business record" exception to hearsay evidence, into the rules governing criminal proceedings. The District Council, through enactment of D.C.Code § 33–556 (1983 Supp.), expressly made allowance for the admission into evidence of chemists' reports stating the results of analyses of controlled substances. That section provides:

> In a proceeding for a violation of this chapter, the official report of chain of custody and of analysis of a controlled substance performed by a chemist charged with an official duty to perform such analysis, when attested to by that chemist and by the officer having legal custody of the report and accompanied by a certificate under seal that the officer has legal custody, shall be admissible in evidence as evidence of the facts stated therein and the results of that analysis. A copy of the certificate must be furnished upon demand by the defendant or his or her attorney in accordance with the rules of the Superior Court of the District of Columbia or, if no demand is made, no later than 5 days prior to trial. In the event that the defendant or his or her attorney subpoenas the chemist for examination, the subpoena shall be without fee or cost and the examination shall be as on cross-examination.

Supported by the "business records" exception to the hearsay rule, D.C.Code § 33–556 was enacted to "relieve ... chemist[s] from the requirement of making ... personal appearances" at trials where the results of chemical analyses are not in dispute. Council of the District of Columbia, Report of Comm. on Judiciary, "D.C. Uniform Controlled Substances Act of 1981" (April 8, 1981).

■ The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." As the framers no doubt recognized, testing the accuracy and credibility of witnesses presented against an accused is vital to the fact-finding process. Thus, without proper confrontation at trial, the "'integrity of the fact-finding process'" is jeopardized. *Berger v. California,* 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508 (1969) (quoting *Linkletter v. Walker,* 381 U.S. 618, 639, 85 S.Ct. 1731, 1743, 14 L.Ed.2d 601 (1965)). Despite the importance of confrontation and the basic rule against admission of hearsay testimony, it is, of course, well established that certain types of hearsay evidence are inherently reliable and therefore admissible as exceptions to the requirements of the Confrontation Clause. *See Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980); *Mattox v. United States,* 156 U.S. 237, 243–44, 15 S.Ct. 337, 339–340, 39 L.Ed. 409 (1895); C. McCormick, Evidence §§ 252, 253 (2d ed. 1972). These exceptions to the rule against admission of hearsay may be broadened or modified by courts and legislatures provided that there "is no material departure from the reason of the general rule." *Snyder v. Massachusetts,* 291 U.S. 97, 107, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934).

■ The business and public records hearsay exceptions are among the exceptions that "rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.'" *Ohio v. Roberts, supra,* 448 U.S. at 66, 100 S.Ct. at 2539 (quoting *Mattox v. United States, supra,* 156 U.S. at 244, 15 S.Ct. at 340). Although the evidence challenged in this case clearly falls within the ambit of the business records exception, this does not end our inquiry into whether appellant's confronta-

records" exception to hearsay. Furthermore, retroactive application of a law can be declared improper only after appellate inquiry into the degree of impairment of expectations that resulted, *Scholtz Partnership v. District of Columbia Rental Accommodations Commission,* 427 A.2d 905, 913 (D.C.App.1981); and, in this case, our review demonstrates that application of § 33–556 merely altered the procedure for admitting evidence and did not impair any substantial rights of appellant.

tion rights were violated. *See California v. Green,* 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–1934, 26 L.Ed.2d 489 (1970) (confrontation values may be violated even though evidence is admitted under a recognized hearsay exception). We must inquire further into whether the evidence at issue is sufficiently trustworthy and bears sufficient "indicia of reliability" to satisfy the purpose of the Confrontation Clause. *Cf. Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972).

■ In analyzing the reliability of the evidence in question, it is significant that the identity of a controlled substance, the fact sought to be established through admission of the DEA reports, is determined by a well recognized chemical procedure. Thus, the reports contained objective facts rather than expressions of opinion. In addition, the chemists who conduct such analyses do so routinely and generally do not have an interest in the outcome of trials. In fact, as employees and scientists, they are under a duty to make accurate reports. It is difficult to perceive any motive or opportunity for the chemists to falsify. We therefore conclude that the DEA records are sufficiently trustworthy to satisfy the purpose of the Confrontation Clause. Appellant was not denied his right of confrontation.

■ Admission of the reports into evidence does not preclude a defendant from inquiring into the reliability of the testing procedure or the qualifications of the chemists. As provided in D.C.Code § 33–556, a defendant is free to subpoena the reporting chemist without cost. Thus, a defendant is not substantially disadvantaged by the government's failure to call the out-of-court declarant, and confrontation rights are effectively preserved.

■ Admission of the chemists' reports into evidence comports with the Supreme Court's pronouncement that "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973). In this case, there is an obvious interest in avoiding the necessity of having chemists appear at trial "to vouch personally for the chain of custody of substances received by the chemist from the time of receipt and the results of his or her analysis when such results are not in dispute." Council of the District of Columbia, Report of Comm. on Judiciary, "D.C. Uniform Controlled Substances Act of 1981," *supra* at 37. In limited situations, production of an available witness may be excused where the utility of trial confrontation is remote. *Ohio v. Roberts, supra,* 448 U.S. at 65 n. 7, 100 S.Ct. at 2538 n. 7 (citing *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970)). This is such a situation.

In holding that the DEA reports were properly admitted into evidence within the "business records" exception to the rule against hearsay, we are in agreement with most state and federal courts that have addressed this or similar issues. *See United States v. Frattini,* 501 F.2d 1234 (2d Cir. 1974) (results of chemical analysis of controlled substance admissible as business record); *Kay v. United States,* 255 F.2d 476 (4th Cir.), *cert. denied,* 358 U.S. 825, 79 S.Ct. 42, 3 L.Ed.2d 65 (1958) (admission of chemist's certificate to establish alcohol level in appellant's blood did not violate right of confrontation); *United States v. Ware,* 247 F.2d 698 (7th Cir.1957) (results of chemical analysis of controlled substance admissible as business record); *State v. Malsbury,* 186 N.J.Super. 91, 451 A.2d 421 (N.J.Super.Ct. Law Div.1982) (chemist's report found admissible); *State v. Kreck,* 86 Wash.2d 112, 542 P.2d 782 (1975) (*en banc*) (results of blood test showing presence of chloroform in body properly admitted in murder prosecution); *In re Arthur,* 27 N.C.App. 227, 218 S.E.2d 869 (N.C.Ct.App.1975), *rev'd on other grounds,* 291 N.C. 640, 231 S.E.2d 614 (N.C. 1977) (statute allowing chemist's certificate to demonstrate results of analysis of controlled substance found constitutional); *In re Kevin G.,* 80 Misc.2d 517, 363 N.Y.S.2d

999 (N.Y.Fam.Ct.1975) (chemist's report on controlled substance found admissible in juvenile proceeding); *Coulter v. State,* 494 S.W.2d 876 (Tex.Cr.App.1973) (chemist's report of results of analysis of controlled substance admitted as business record without violating Confrontation Clause); *State v. Larochelle,* 112 N.H. 392, 297 A.2d 223 (1972) (certificate to establish alcohol level in appellant's blood found admissible); *Commonwealth v. Harvard,* 356 Mass. 452, 253 N.E.2d 346 (1969) (statute allowing admission of chemist's certificate to prove results of analysis of controlled substance found constitutional); *State v. Torello,* 103 Conn. 511, 131 A. 429 (1925) (certificate of chemist's analysis of alcohol content of liquor held admissible); *but see United States v. Oates,* 560 F.2d 45 (2d Cir.1977) (chemist's report inadmissible under any exceptions to hearsay rule if sought to be introduced against the accused); *State v. Henderson,* 554 S.W.2d 117 (Tenn.1977) (report of analysis of controlled substance held inadmissible as violation of Confrontation Clause).

■ The courts have emphasized that the Confrontation Clause does not require barring the admission of reports that contain objective facts and that are made in the regular course of business by persons without any apparent bias. In adopting similar reasoning, and holding that the DEA reports were properly admitted, we are merely recognizing the firmly established principles that the right of confrontation is not absolute, and that the Sixth Amendment does not prohibit development of reasonable exceptions to the rule against admission of hearsay.[2]

## II

■ Appellant also asserts that he was denied his Sixth Amendment right to a speedy trial. The time between appellant's arrest in July of 1981 and his trial in January of 1983 totaled eighteen months. Fifteen months of the delay were attributable to the government, and the remaining three months were chargeable to appellant. Because the delay exceeded one year, appellant's claim has *prima facie* merit that the government must rebut. *Strickland v. United States,* 389 A.2d 1325, 1329 (D.C. App.1978), *cert. denied,* 440 U.S. 926, 99 S.Ct. 1258, 59 L.Ed.2d 481 (1979).

■ As the government relates, eight months of the delay, July 15, 1981 to March 22, 1982, were the result of normal administrative delay between arrest and the first trial date. Appellant does not assert that the remaining seven months attributable to the government were part of a deliberate scheme to prejudice the defense. We also note that appellant did not assert his right to a speedy trial until September 8, 1982, approximately fourteen months after his arrest. The record also indicates that appellant was imprisoned on unrelated charges during much of the delay, and he has not suggested that his ability to present a defense at trial was affected. It is apparent, therefore, that appellant was not unduly prejudiced by the delay. Thus, after assessing the length of delay, the reasons for delay, the assertion of the right by defense, and the prejudice resulting to appellant—factors enunciated by the Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92

---

2. Appellant also contends that application of § 33–556 violated the constitutional provision against *ex post facto* laws. Procedural changes that impair a defense that had been available to the accused or lessen "the quantity or degree of proof necessary to convict . . . [are] within the prohibition of the ex post facto clause." *Bowyer v. United States,* 422 A.2d 973, 980 (D.C.App.1980) (citations omitted). But if the change disadvantages the defendant in a limited manner by merely changing the way in which the trial is conducted, then it does not violate the prohibition. *Id.* (citing *Beazell v. Ohio,* 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925)).

The procedural change effected through enactment of § 33–556 does not lessen the degree of proof necessary to convict for narcotic offenses but merely alters the method by which the government may meet its burden. The change, therefore, is one that merely affects the manner in which the trial is conducted and, as such, is not prohibited by the *ex post facto* clause.

S.Ct. 2182, 33 L.Ed.2d 101 (1972)—we conclude that appellant was not denied his right to a speedy trial.

*Affirmed.*