David J. ONTELL, Appellant,

v.

**CAPITOL HILL E.W. LIMITED PARTNERSHIP, Appellee.**

No. 86–472.

District of Columbia Court of Appeals.

Argued Feb. 2, 1987.
Decided July 9, 1987.

David J. Ontell, Washington, D.C., pro se.

Robert F. Leibner, Washington, D.C., for appellee.

Before BELSON and ROGERS, Associate Judges, and PAIR, Senior Judge.

BELSON, Associate Judge:

This appeal raises the question whether a notice to quit commercial premises was ineffective because it was not written in Spanish as well as in English. We hold that because the commercial tenant suffered no prejudice, as he was conversant with English but not with Spanish, the failure to give the statutorily required notice in Spanish did not render the notice ineffective. Accordingly, we affirm the order granting summary judgment for possession.

Appellant David J. Ontell was a tenant in a mixed-use building ("the building") owned and managed by appellee Capitol Hill E.W. Limited Partnership ("the Partnership"). He first moved into his unit in the building ("the premises") in May 1980. The building was, at that time, owned by the Capitol Hill Lodge Associates. After his initial one-year lease expired, Ontell remained in the premises as a month-to-month tenant. The record shows that Ontell, an attorney, conducted a law practice from the premises, had placed a sign in the window advertising his practice, and listed the premises as his business address. He maintained a separate residence, although he occasionally slept in the premises, and often ate meals and showered there.

When Capitol Hill Lodge Associates decided to sell the building, the building's tenants formed the Lodge Tenants Association ("the Association") hoping to purchase the building collectively in order to enable

individual tenants to purchase their respective units. *See* D.C. Code §§ 45–1631, –1635 (1986). Ontell deposited a total of $2,000 with the Association, pursuant to a form agreement which provided that the Association would hold the money in escrow while it contracted for the purchase of the building. *See* D.C.Code § 45–1615(b) (1986). The agreement provided further that, if the Association or its successors or assigns should purchase the building, Ontell would have the option of applying his deposit toward the purchase price of the premises he had been renting.

The Association did not purchase the building, but instead assigned its right to purchase to the Partnership, which bought the building on August 15, 1985. On August 26, the Association returned Ontell's $2,000 deposit, along with dues he had paid to the Association and accrued interest. The Association explained to Ontell that, as a commercial tenant, he could be a member of the Association only at the Association's discretion, and that the Association had decided to deny him membership. Two days later, the Partnership served Ontell with a thirty-day notice to vacate his premises. Appellant did not vacate, and the Partnership filed suit for possession.

█ Ontell opposed the Partnership's motion for summary judgment, arguing that there was a genuine issue of material fact as to whether he was a residential tenant, that if he were a residential tenant he had a statutory right to purchase the premises, and that, even if he were a commercial tenant, he was entitled to defend the Partnership's suit based on retaliatory eviction. At a hearing on the motion, Ontell also argued that he had not received effective notice to vacate because the notice was not written in Spanish, as required by D.C.Code § 45–1406 (1986). The court found that, as a matter of law, Ontell was a commercial tenant, and granted summary judgment for the Partnership.[1]

█ On appeal, Ontell renews his contention that he did not receive effective notice to vacate the premises because the notice to quit was not written in Spanish.[2] *See* D.C. Code § 45–1406 (1986). Since the notice was technically defective, Ontell argues, he had no legal duty to vacate the premises despite his actual notice that the Partnership wished to terminate his month-to-month tenancy. We disagree.

█ At the outset, we note that § 45–1406,[3] "Service of notice to quit," applies to commercial as well as to residential tenancies. Unlike the chapters of Title 45 that govern rental housing conversion and rent control, *see* D.C.Code §§ 45–1603(16), –2503(33) (1986), chapter fourteen, "Landlord and Tenant," is not restricted by its terms to residential tenancies. Furthermore, this court has applied § 45–1406's predecessor, D.C.Code § 45–906 (1973), as

---

1. The fact that the unit in question has been destroyed for renovation since the filing of this appeal does not render the appeal moot. *See Joyner v. Jonathan Woodner Co.*, 479 A.2d 308, 310 (D.C.1984).

2. We reject Ontell's contention that there was a genuine issue of material fact as to whether he was a commercial or residential tenant. The material facts underlying the nature of appellant's occupation of the premises were not in dispute. We affirm the trial court's legal conclusion that, given these undisputed facts, appellant's tenancy was commercial, rather than residential.

 We also reject appellant's argument that, as a commercial tenant, he may raise the defense of retaliatory eviction. As defined by statute, the defense of retaliatory eviction is available only to residential tenants. *See* D.C. Code §§ 45–2503(15), (33), (36), 45–2552 (1986).

3. The language of the statute is as follows:

 Every notice to the tenant to quit shall be served *in English and Spanish* upon him personally, if he can be found, and if he can not be found it shall be sufficient service of said notice to deliver the same to some person of proper age upon the premises, and in the absence of such tenant or person to post the same in some conspicuous place upon the leased premises. If the notice is posted on the premises, a copy of the notice shall be mailed first class U.S. mail, postage prepaid, to the premises sought to be recovered, in the name of the person known to be in possession of the premises, or if unknown, in the name of the person occupying the premises, within 3 calendar days of the date of posting.

 D.C.Code § 45–1406 (1986) (emphasis added).

well as other sections within chapter fourteen, to commercial as well as to residential tenancies. *See, e.g., Custis v. Klein*, 177 A.2d 268, 268, 269 (D.C.Mun.App.1962) (notice to quit to commercial tenant under D.C.Code § 45–906 (1961)); *Lake v. Angelo*, 163 A.2d 611, 612 & n. 2 (D.C.1960) (notice to quit to commercial tenant at sufferance under D.C.Code § 45–904 (1951) (current version at D.C.Code § 45–1404 (1986)); *cf. Jones v. Brawner Co.*, 435 A.2d 54, 56 (D.C.1981) (§ 45–906 provides safeguards separate from, and in addition to, safeguards provided by Rental Housing chapter). As there is nothing in § 45–1406's plain language to suggest that it does not apply to commercial tenancies, we decline to read the statute's unambiguous language to create such a limitation. Therefore, under § 45–1406, the Partnership was required to serve notice to appellant in both English and Spanish.

█ While § 45–1406 is unambiguous as to the scope of its application, it is silent as to its enforcement. Thus, we must look to the statute's legislative history, as well as to judicial praxis, to determine the legal effect of a notice which does not meet the statutory requirements. *Cf. Dimond v. District of Columbia*, 253 U.S.App.D.C. 111, 117, 792 F.2d 179, 186 (1986) (looking to legislative history of statute to determine whether supported by legitimate state interest).

█ It is true that, generally, there is a judicial policy to invalidate a notice to quit when the manner of serving the notice is defective, despite a tenant's actual receipt of the notice. *See Jones v. Brawner Co., supra*, 435 A.2d at 56 (notice to quit ineffective despite actual notice when served by slipping under door); *Moody v. Winchester Mgmt. Corp.*, 321 A.2d 562, 563 (D.C.1974) (same). We decline to extend that policy, however, to invalidate an otherwise valid notice to quit for being written only in English, when the notice was served on a commercial tenant who alleges no prejudice from the failure to translate the notice into Spanish.

We note first that the legislative history surrounding D.C.Code § 45–1406 (1986) suggests a primary concern with the *housing* rights of Spanish-speaking residents. *See* Committee on Consumer Regulatory Affairs, Testimony Before the D.C. City Council in Support of Proposed Bill 5–134 *passim* (April 12, 1983). While, as discussed *supra*, this legislative concern does not negate the statute's application to commercial tenancies, it does erode the policy behind nullifying an untranslated notice in the case of a commercial tenant. Commercial tenants, even those for whom English is not their first language, are often subject to licensing or other governmental procedures, and also are likely to conduct at least some of their business in English. As their day-to-day operation is more likely to force commercial tenants to transact matters in English, the policy reasons for automatically invalidating an untranslated notice to quit are far less persuasive than in the case of residential tenants.[4]

We recognize that, before enacting the Bill that added to the notice to quit statute a Spanish language requirement, see Bill 5–134, Council of the District of Columbia (March 7, 1983), the District of Columbia

---

**4.** The legal distinction between commercial and residential tenancies is well grounded. Indeed, many of the developments in landlord-tenant law of the past two decades, *see e.g., Javins v. First Nat'l Realty Corp.*, 138 U.S.App.D.C. 369, 371, 428 F.2d 1071, 1073, *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970), have been limited explicitly to a residential context. *Compare Interstate Restaurants, Inc. v. Halsa Corp.*, 309 A.2d 108, 110–11 (D.C.1973) (refusing to extend *Javins* court holds lease forfeited by commercial tenant's breaches despite breaches by landlord) *and E.P. Hinkel & Co. v. Manhattan Co.*, 165 U.S.App.D.C. 140, 145, 506 F.2d 201, 206 (1974) (refusing to extend *Javins* to require commercial landlord to make repairs to property) *with George Washington Univ. v. Weintraub*, 458 A.2d 43, 47 (D.C.1983) (relying on *Javins* to invalidate exculpatory clause in residential lease); *cf.* M. Friedman, Contracts & Conveyances of Real Property § 1.2 (n) at 49–52 (4th ed. 1984) (warranty of fitness in purchase of residential property by first purchaser from vendor-builder). *See generally Henrioulle v. Marin Ventures, Inc.*, 20 Cal.3d 512, 517–21, 143 Cal.Rptr. 247, 250–52, 573 P.2d 465, 468–70 (1978) (en banc) (discussing public interest implicated by residential tenancies); R. Schoshinski, American Law of Landlord & Tenant §§ 3:29, 4:12, 12:2 at 722 & n. 19, 12:3 at 726–27 & n. 42 (1980).

had an opportunity to clarify a broader version of the issue which we now face, *viz,* the defectiveness of a notice written only in English when served on an English-speaking tenant, residential or commercial. The Corporation Counsel had suggested rewriting the bill to contain the following language: "The notice shall be written in English and in Spanish but shall not be defective if written only in English provided that Spanish is not the first language of the occupant of the premises." Letter of March 12, 1984, Pauline A. Schneider, Director of Intergovernmental Relations, to Honorable John Ray, Chairman, Committee on Consumer and Regulatory Affairs. While failure to enact an amendment to a bill may indicate a legislative intent to reject the amendment's provisions, it may also indicate a legislative assumption that the terms of the amendment were already implicit within the bill. 2A SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 48.18 at 341 (4th ed. 1984). In addition, the Council's rejection of this broad language may have been motivated largely by a desire to protect residential tenants by declining to require that they prove prejudice. Under the circumstances, we do not interpret the Council's failure to adopt the Corporation Counsel's suggestion as indicative of its intent that the omission of notice in Spanish must, in cases of commercial tenancies, render defective an otherwise valid notice to quit.

We are particularly reluctant to invalidate a commercial tenant's notice to quit when the failure to translate into Spanish has created absolutely no prejudice to the tenant. In the instant case, there is no factual dispute that Ontell reads and understands English, and, indeed, does not read or understand Spanish. *Cf. Globe Clothing Shop v. Skolnick,* 50 A.2d 271, 272 (D.C.Mun.App.1946) (notice to quit not invalid for failing to designate tenant as corporation, partnership, or individual, when tenant not misled by notice); *Creel v. Adams,* 49 App.D.C. 306, 307, 265 F. 456, 457 (1920) (notice to quit not invalid when addressed to "Wm. Creel" when tenant, Richard Creel, admitted timely receipt of notice). Given that the nature of Ontell's tenancy was commercial, and his actual notice undisputed, we hold that the notice to quit was not ineffective for not being written in Spanish. Having received actual notice sufficient to satisfy the purposes of the notice to quit statute, Ontell was required to vacate the premises at the end of the thirty-day notice period.

We affirm the trial court's order of summary judgment granting possession of the premises to the Partnership.

*Affirmed.*