**Robert BELTON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 89–42.**

District of Columbia Court of Appeals.

Submitted June 14, 1990.
Decided Sept. 26, 1990.

Lloyd T. Shanley III, Washington, D.C., appointed by this court, was on the brief for appellant.

Jay B. Stephens, U.S. Atty., John R. Fisher, Rupert V. Barry, and Mark J. Carroll, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before ROGERS, Chief Judge, and STEADMAN and SCHWELB, Associate Judges.

STEADMAN, Associate Judge:

Appellant, convicted of a drug offense, raises on appeal a novel issue with respect to the statutory provision authorizing the government to introduce a chemist's drug analysis report. D.C.Code § 33–556 (1988).[1] He argues that because the government failed to provide him with a copy of the report of a chemical analysis of

---

1. Appellant's objection to the trial court's denial of his suppression motion is meritless. Appellant, with a hand in his pants pocket, approached an undercover police vehicle in an area known for frequency of drug transactions and called out "rock," a street name for crack cocaine. Four police officers were in the vehicle, including Officer Belden, who had previously encountered appellant on a number of occasions. In 1986, Officer Belden had participated in the execution of a search warrant at appellant's house, from which large amounts of cocaine and three handguns were recovered. Later, he had arrested appellant in the very block on which the incident giving rise to this case occurred. Officer Belden had also seen and spoken with appellant at other times. Another of the officers in the police vehicle had also participated in the execution of the search warrant of appellant's house during which drugs and guns were recovered.

Upon seeing the undercover officers, whom appellant apparently recognized, he began to back away. In the process, he removed his hand from his pants pocket. Officer Belden, who testified in response to a question from the court that he did not know what was in appellant's pocket and that "my first feeling is for my safety," first frisked the pocket where appellant's hand had been and then patted down around appellant's waistband and pockets for weapons. This limited frisk was permissible. Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968) (investigatory frisk for weapons is permissible where "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger").

As he frisked appellant, Officer Belden observed "bundles of newspapers" protruding from appellant's pocket. Officer Belden stated that in that neighborhood, it was "very common" for people to bundle cocaine in pieces of newspaper. Indeed, the officer testified that in the very block where appellant was arrested, he had personally made 15 to 20 arrests in which cocaine was similarly packaged in newspaper. Officer Belden then removed the papers, found ten plastic packets of cocaine wrapped within them, and arrested appellant. Because the facts here established probable cause to arrest appellant before the removal of the bundle containing the cocaine, that action was proper as a search incident to arrest. United States v. Robinson, 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973). The fact that the search occurred before appellant was formally placed under arrest does not compel a different conclusion. See In re E.G., 482 A.2d 1243, 1246 n. 3 (D.C.1984) (per curiam).

the drugs at least five days before trial, as required by that statute, the trial court erred in admitting the report into evidence. We conclude that although the government failed to comply with the statute, appellant suffered no prejudice mandating exclusion of the report. Accordingly, we affirm.

## I

D.C.Code § 33–556 [hereinafter "section 33–556"], easing a formalistic evidentiary requirement in drug cases, provides as follows:

> In a proceeding for a violation of this chapter, the official report of chain of custody and of analysis of a controlled substance performed by a chemist charged with an official duty to perform such analysis, when attested to by that chemist and by the officer having legal custody of the report and accompanied by a certificate under seal that the officer has legal custody, shall be admissible in evidence as evidence of the facts stated therein and the results of that analysis. A copy of the certificate must be furnished upon demand by the defendant or his or her attorney in accordance with the rules of the Superior Court of the District of Columbia or, if no demand is made, no later than 5 days prior to trial. In the event that the defendant or his or her attorney subpoenas the chemist for examination, the subpoena shall be without fee or cost and the examination shall be as on cross-examination.

■ Here, appellant's attorney received the chemist's report, along with the certificate of compliance mandated by section 33–556, on Monday, October 31. Trial began on Thursday, November 3. When, on the second day of trial, the government attempted to introduce the report into evidence, appellant objected on the ground that the government had failed to comply with the advance notice provisions of section 33–556. The government responded that it had mailed the chemist's report on Thursday, October 27, a week before trial,[2] and that accordingly it had complied with the provisions of section 33–556.

The government's analysis, however, ignores the time computation dictates of Rule 45 of the Superior Court Rules of Criminal Procedure. In pertinent part, Rule 45(a) provides:

> In computing any period of time the day of the act or event from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included.... When a period of time prescribed or allowed is less than eleven (11) days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation.

Super.Ct.Crim.R. 45(a) (1989). Because the government in this case sent appellant a copy of the chemist's report and accompanying certificate[3] by mail, the provisions of Rule 45(e) also govern. Rule 45(e) provides:

> Whenever a party has the right or is required to do an act within a prescribed period after the service of a notice or other paper upon him and the notice or other paper is served upon him by mail, 3 days shall be added to the prescribed period.

Super.Ct.Crim.R. 45(e) (1989).[4]

Under these time computation rules, a copy of the chemist's report was not "fur-

---

2. The government had also filed the report with the court on October 27.

3. Perhaps somewhat curiously, the statute only expressly requires that a copy of the certificate be furnished to defense counsel in advance. Section 33–556 does provide, however, that the chemist's analysis of the controlled substance is to "accompan[y]" the certificate in order to be admissible into evidence. Additionally, the legislative history to section 33–556 makes clear that the "report of the chemist" "must be made available to the defense" under the five-day ad-

vance notice provision. REPORT OF THE COMMITTEE ON THE JUDICIARY, COUNCIL OF THE DISTRICT OF COLUMBIA, ON BILL NO. 4–123, THE "DISTRICT OF COLUMBIA UNIFORM CONTROLLED SUBSTANCES ACT OF 1981," at 37 (1981) [hereinafter "COMMITTEE REPORT"].

4. Although the express provisions of Rule 45(e) may seem inapplicable since this is not a case where either party was "required to do an act within a prescribed period after the service of a notice or other paper," the rationale of the Rule is applicable here. As discussed below, the "obvious purpose" of the five-day notice in section

nished" to appellant five days before trial. Under Rule 45(a), the day "from which the designated period of time begins to run"— either the first day of trial or the day the notice was mailed—is not included in the five-day period.[5] Because section 33–556 provides for fewer than eleven days' notice, Saturday, October 29, and Sunday, October 30, are also excluded. Consequently, the fifth day before trial was Thursday, October 27. Moreover, because the government mailed the chemist's report, the three-day extension prescribed by Rule 45(e) applies. Thus, under the provisions of Rule 45, the government would have had to mail the chemist's report on Monday, October 24, to provide appellant with the required notice. We therefore conclude that the government here did not "furnish" appellant with a copy of the chemist's report "no later than 5 days prior to trial," as required by section 33–556.

## II

■ The issue we must address, then, is whether the government's violation of the five-day notice requirement of section 33–556 rendered the chemist's report inadmissible in this case.[6] The trial court found that appellant had suffered no prejudice as a result of the government's failure to comply with the notice requirement of section 33–556, and admitted the chemist's report into evidence.[7] We find no error in this ruling. We conclude that failure to comply with the five-day notice requirement does not require automatic exclusion of chem-

---

33–556 is to give sufficient notice to the defendant to decide whether to call the chemist for cross-examination. *Giles v. District of Columbia,* 548 A.2d 48, 50–51 (D.C.1988). Application of Rule 45(e) is necessary to effectuate this purpose, for otherwise, given the delay occasioned by mailing, the defendant would most likely have fewer than five days to decide whether to call the chemist for cross-examination. *See District of Columbia v. Ortiz,* 574 A.2d 286, 288 (D.C.1990) (even though time to file trial demand was not triggered by service of a notice, three additional days are added for mailing under analogous civil rule; "the amount of time parties have for making the decision to act ... should not be shortened simply because they must wait to receive notice ... by mail" (citing *United Retail Cleaners & Tailors Ass'n v. Denahan,* 44 A.2d 69, 70 (D.C.1945))); *see also Wallace v. Warehouse Employees Union #730,* 482 A.2d 801, 805–08 (D.C.1984). Additionally, by its own terms, section 33–556 states that the chemist's report is to be furnished to the defendant "in accordance with the rules of the Superior Court of the District of Columbia."

**5.** It does not matter whether the day on which the report is "furnished" or the first day of trial is deemed to be the "day of the act or event from which the designated period of time begins to run" because either approach yields the same result. We note, however, that pursuant to both Rule 45(a) and the common law rule of time computation, one of these "terminal days" is to be included within the five-day advance notice period. *See* 74 Am.Jur.2d *Time* § 15, at 598 (1974) ("[i]n the absence of anything showing an intention to count only 'clear' or 'entire' days, it is generally held that in computing the time for performance of an act or event which must take place a certain number of days before a known future day, one of the terminal days is included in the count and the other is exclud-

ed"). In cases involving requirements that a party receive notice of motion or request a given number of days before a hearing or trial, courts in other jurisdictions have employed different approaches in articulating whether it is the date of the trial/hearing or the date on which notice is given which is excluded from the time computation. *Compare Equitable Gen. Ins. Co. v. Helm,* 128 Ariz. 6, 7, 623 P.2d 365, 366 (1981) (the date set for trial is the day "'from which the designated period of time begins to run,' and is not included in computing" the notice period; the last day of the period, on which notice was filed, is included) *with First Bank of Cadillac v. Benson,* 81 Mich.App. 550, 552–55, 265 N.W.2d 413, 415–16 (1978) (per curiam) (under rule which "includes the day of performance and excludes the day from which the notice begins to run," the first day of notice period is the day after notice was given; the day of the hearing is "properly included as the last day"). However, in these cases, as in ours, the result would have been the same under either method of calculation.

**6.** There is no assertion in this case that the government's failure to comply with the advance notice requirement was intentional or otherwise made in bad faith.

**7.** Later, the trial court also apparently took the view that because the government had mailed appellant's lawyer a copy of the chemist's report a week before trial, it had complied with section 33–556. Neither party cited, and the court did not purport to apply, the time computation methods prescribed by Superior Court Criminal Rule 45. However, the trial court never modified or retracted its initial finding that appellant had suffered no prejudice as a consequence of receiving a copy of the chemist's report three days, rather than five days, before trial.

ists' reports otherwise admissible under section 33–556. Under the circumstances of this case, appellant suffered no prejudice warranting reversal.

Before us, appellant argues that admission of the chemist's report both violated his confrontation clause rights under the sixth amendment [8] and was improper under section 33–556 itself. These contentions, however, reflect a misapprehension of both the justification underlying the admissibility of chemists' reports under section 33–556 and the purpose of that provision's five-day notice requirement.

### A

■ As a constitutional matter under the confrontation clause, the admissibility of a Drug Enforcement Agency chemist's report is basically predicated not on advance notice to the defendant, but on the inherent reliability of the chemist's report itself.[9] As we explained in *Howard v. United States*, 473 A.2d 835 (D.C.1984), the analysis of the identity of controlled substances "is determined by a well recognized chemical procedure." *Id.* at 839. As such, a certified chemist's report of such an analysis "contain[s] objective facts rather than expressions of opinion." *Id.* In addition, we observed that the "chemists who conduct such analyses do so routinely and generally do not have an interest in the outcome of trials," that they are under a duty to make accurate reports, and that "[i]t is difficult to perceive any motive or opportunity for the chemists to falsify" their reports. *Id.* We therefore concluded that certified Drug Enforcement Agency chemists' reports "are sufficiently trustworthy to satisfy the purpose of the Confrontation Clause," and that admission of those reports in lieu of the chemist's testimony was constitutionally permissible. *Id.*

In this case, the chemist's report was rendered no less reliable by virtue of the fact that appellant received it three days before trial began, rather than the five days mandated by section 33–556. Even before us, appellant in no way contests the reliability of the report. Notwithstanding the government's dilatoriness in furnishing the chemist's report to appellant, the report still was "sufficiently trustworthy" and bore "sufficient 'indicia of reliability' to satisfy the purpose of the Confrontation Clause." *Id.* (citation omitted). Appellant therefore suffered no deprivation of his confrontation clause rights as a consequence of the trial court's decision to admit the chemist's report.

### B

Apart from confrontation clause concerns, however, the question remains whether, in light of the government's failure to furnish appellant with a copy of the chemist's report five days before trial began, section 33–556 prohibited admission of the chemist's report. Neither the statute itself nor its legislative history expressly indicates whether the government's failure to comply with the advance notice requirement renders inadmissible a chemist's report otherwise admissible under section 33–556. Mindful of our responsibility to effectuate legislative intent, we therefore turn to the purpose of section 33–556. *See Tenley and Cleveland Park Emergency Comm. v. District of Columbia Bd. of Zoning Adjustment*, 550 A.2d 331, 334 n. 10 (D.C.1988) ("[o]ur primary goal is to give effect to the intent of the legislative body that drafted the language"), *cert. denied*, — U.S. —, 109 S.Ct. 1539, 103 L.Ed.2d 843 (1989); *Carpenter v. United States*, 475 A.2d 369, 373 (D.C.1984) (court looks "to the shape of the statute as a whole, as well as to its legislative history, to determine what effect [its words] should be given").

---

8. The confrontation clause of the sixth amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.

9. Any relevance that such notice may have in confrontation clause analysis is effectively subsumed in the discussion in Part II B regarding possible prejudice to appellant as a result of the government's failure to adhere to section 33–556.

Section 33–556 is part of the District of Columbia Uniform Controlled Substances Act of 1981, codified at D.C.Code §§ 33–501 to –567 (1988). One of the major objectives of this legislation was to "strengthen[ ] the powers of law enforcement" in the effort to control illegal drug use. COMMITTEE REPORT, *supra* note 3, at 7; *id.* at 1 (legislation "will allow government ... to control more effectively the problem of drug abuse and drug dependence"). As part of this effort, the Council of the District of Columbia enacted section 33–556 to relieve the government of the burden of producing the chemist who analyzes a controlled substance to "appear[ ] at trial to vouch for the results of the analysis" and to "vouch personally for the chain of custody" of the substance. *Id.* at 8, 37, *quoted in Giles, supra* note 4, 548 A.2d at 52.

The legislative history also reveals that the chemist's exemption from testifying is meant to apply only to those cases where "the results of chemical analyses are not ... in dispute." COMMITTEE REPORT, *supra* note 3, at 9, 37. Where a dispute about the results does arise, section 33–556 expressly authorizes the defendant to subpoena the chemist at no cost and to subject the chemist to cross-examination to challenge the accuracy of his or her results. The five-day advance notification provision serves to enable the defendant to determine whether a dispute as to the results of the chemical analysis exists and to decide whether to exercise the statutory right to subpoena and cross-examine the chemist. *Giles, supra* note 4, 548 A.2d at 50–51 ("[t]he obvious purpose of [the five-day advance notice] provision is to give sufficient notice to the defendant to decide whether to call the chemist for cross-examination"). Thus, a failure to comply with the advance notice requirement would frustrate the legislative purpose only if it impinged on a defen-

dant's opportunity to assess the accuracy of the report and to choose whether to exercise the statutory right granted by section 33–556 to subpoena and cross-examine the chemist who prepared the report.

In this case, however, there is no indication or assertion that appellant's opportunity either to assess the chemist's report or to decide whether to call the chemist for cross-examination was in any way frustrated by the government's failure to furnish him with a copy of the report five days before trial. Here, defense counsel acknowledged that he received a copy of the report three days before the start of trial. Additionally, the government did not seek to introduce the report until Friday, November 4, four days after defense counsel received a copy of the report. Appellant never asserted to the trial court that the chemical analysis described in the report was inaccurate. He never indicated that he wished to call the chemist for cross-examination. He never sought a recess or continuance [10] and never even suggested that the government's dilatoriness had left him without sufficient time to evaluate the chemist's report. We therefore have no reason to question the trial court's express finding that appellant suffered no prejudice as a result of the government's failure to furnish him with a copy of the chemist's report five days before trial. *Cf. Ontell v. Capitol Hill E.W. Ltd. Partnership,* 527 A.2d 1292, 1296 (D.C.1987) (court would not invalidate notice to quit which violated governing statute in case where the statutory violation "created absolutely no prejudice to the tenant").

The Council of the District of Columbia included the five-day advance notice requirement in section 33–556 to enable criminal defendants to make an informed choice about whether to call for cross-examination the chemist who analyzed a controlled sub-

---

**10.** Where a defendant in a timely manner does request a continuance because the government has failed to provide him or her with a copy of the chemist's report five days before trial, the trial court should grant the request so as to give effect to the rights section 33–556 aims to protect. This case differs from *Giles v. District of Columbia* in that the defendant in *Giles* raised his objections to the "form of the chemist's

report," *Giles, supra* note 4, 548 A.2d at 51, and the objection was made on the first day of trial before any witnesses had been called. *Id.* at 50. In contrast, the defendant here waited until the very moment that the government offered the report into evidence. We need not determine whether, notwithstanding such delay, the trial court would have been required to grant a continuance if actually requested at that point.

stance. In this case, appellant in no way demonstrated or even claimed that his receipt of a copy of the chemist's report three days, rather than five days, before trial interfered with that right. The admission of the report presents no ground for reversal here. Accordingly, the judgment appealed from is

*Affirmed.*